THOMAS E. MOSS
United States Attorney
**GEORGE W. BREITSAMETER**
Assistant U.S. Attorney
**JAMES D. OESTERLE**
Special Assistant United States Attorney
Wells Fargo Center, Suite 201
877 West Main Street
Boise, Idaho 83702
(208) 334-1211

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR-01-204 S EJL |
| Plaintiff, ) | |
|  ) | **PLEA AGREEMENT** |
| v. ) | |
|  ) | |
| MAC'S RADIATOR & REPAIR, INC., ) | |
|  ) | |
| Defendant. ) | |

I. **INTRODUCTION**

A. This document contains the complete plea agreement (Agreement) between the United States of America and Defendant MAC'S RADIATOR & REPAIR, INC. (MAC'S), an Oregon corporation doing business in Idaho. No other agreement, understanding, promise or condition exists between the parties.

B.  The parties expressly agree and acknowledge that this Agreement is entered into and controlled by Fed. R. Crim. P. 11(e)(1)(B) and 11(e)(2). The Court may accept or reject the recommendations or requests of the parties. This means that the Defendant may not withdraw from this Agreement if the Court deviates from the sentencing recommendations made by the United States or by the Defendant.

C.  This Agreement does not limit the rights of any party to speak at the time of sentencing consistent with the recommended provisions set forth in the Agreement, correct inaccuracies or provide the Court or the United States Probation Office (Probation Office) with a full description of the Defendant's conduct that gave rise to the charge. The parties agree to allocute at sentencing in favor of the joint recommendation regarding the appropriate sentence as set forth in this agreement.

D.  This Agreement is limited to the United States Attorney's Office for the District of Idaho (United States Attorney's Office) and does not bind other sections or divisions of the Department of Justice or any other federal, state or local prosecutive or regulatory authority.

E.  The Defendant agrees that it has been fully advised of its statutory and Constitutional rights, that it has been informed of the charges and allegations against it and the possible penalties, and that it understands them. The Defendant further agrees that it

understands that by entering a plea of guilty as set forth below, it will be waiving certain statutory and constitutional rights to which it is otherwise entitled.

F.  The United States and the Defendant agree that Chapter 8 of the Federal Sentencing Guidelines Manual governs this case with regard to probation, subject to and consistent with the nature of this Rule 11(e)(1)(B) agreement; however, pursuant to U.S.S.G. § 8C2.1, Chapter 8 of the Federal Sentencing Guidelines Manual does not apply to the determination of an appropriate fine.

II. **THE AGREEMENT**

A.  The Defendant agrees to:

1.  Waive indictment and plead guilty to an Information charging it with one felony count of knowingly violating Title 42 of the United States Code, Section 9603(b) (Comprehensive Environmental, Response, Compensation and Liability Act, Section 103(b)), by failing to report the release of a reportable quantity of a hazardous substance.

2.  Acknowledge responsibility for the acts and omissions constituting the crime alleged in the Information and constituting the factual basis for its plea of guilty, which facts are set forth below in Section VI of this Agreement.

3.  Have its representative, duly authorized by the Defendant's Board of Directors and with authority to speak for the Defendant, appear and enter the guilty plea and also appear for imposition of sentence.

Mac's Radiator & Repair, Inc.
Plea Agreement
Page 3

4. Provide to the United States and the Court written evidence, in the form of a notarized resolution of its Board of Directors with both notary and corporate seals, certifying that the Defendant is authorized to waive its right to Indictment, to plead guilty to the Information in this case, and to enter into and comply with all provisions of this Agreement. The resolution shall further certify that the Defendant's authorized representative is authorized to take these actions and that all corporate formalities, including but not limited to approval by Defendant's directors, required for such authorization have been observed.

5. Forfeit its right to appeal any sentence imposed in conformity with the provisions of this Rule 11(e)(1)(B) Agreement. The parties agree not to make any public statement, other than as required by law, prior to the filing of the Information. However, the parties specifically reserve the right to make public statements or filings that do not contradict the facts set forth in the Information and the terms of this Agreement after the filing of the Information.

6. Pay a fine of $90,000 with a credit as specified in paragraph IV.A of this Agreement.

7. Be placed on organizational probation for a probationary period of one year as specified in paragraph IV.C of this Agreement.

8. Establish and maintain a court approved environmental compliance program as outlined in paragraph IV.C.3 of this Agreement.

B.  The Government agrees that in exchange for the Defendant's full and complete compliance with the terms of this Agreement, the Government agrees that:

1.  It will not seek additional criminal prosecution in the District of Idaho against MAC'S, or any other affiliated or related corporate entity, for environmental criminal violations relating to the disposal and release of contaminated wastewater and sludge materials from the MAC'S facility located at 112 West 35th Street, Garden City, Idaho, during the period from December 2000 through June 12, 2001. This Agreement does not limit the Government's right to prosecute any offenses based on facts of which it was unaware as of the date of this Agreement. The parties understand that this Agreement does not apply to any individuals, including but not limited to present and former employees, officers, agents and contractors. The parties further understand that this Agreement applies only to federal criminal charges and only binds the U.S. Attorney's Office for the District of Idaho. The Defendant has discussed with its attorneys and understands that nothing contained in this Agreement is meant to limit the rights and authority of the United States to take further civil or administrative action against the Defendant including, but not limited to, any listing and debarment proceedings to restrict rights and opportunities of the Defendant to contract with or receive assistance, loans and benefits from United States Government agencies.

## III. PENALTIES

The maximum penalty for the count in the Information is a fine of $500,000.00 or twice the gross gain or loss resulting from the unlawful conduct, 18 U.S.C. § 3571; three years probation; and a special assessment of $400.00, 18 U.S.C. § 3013(a)(1)(B).

## IV. RECOMMENDATIONS AS TO SENTENCE

Pursuant to Fed. R. Crim. P. 11(e)(1) and (2), the parties agree that the following sentence is appropriate and should be imposed in this case:

A. MAC'S shall pay a fine of $90,000, with a credit not to exceed $50,000 for expenses incurred for environmental response costs arising from the discharge and release of hazardous wastes and substances from MAC's Garden City facility in December 2000.

B. MAC'S shall pay a mandatory special assessment of $400.00 to the Victim's Assistance Fund, pursuant to Title 18, United States Code, Section 3013(a)(2)(B).

C. MAC'S shall be placed on organizational probation for a period of one year. In addition to the Court's standard conditions of probation and in addition to conditions that may be set by the Court, the terms of probation shall include the following specific conditions:

1. MAC'S shall commit no further violations of environmental laws, regulations or permits of the United States, including those for which primary enforcement has been delegated to a state.

2. MAC'S agrees to establish and maintain an effective environmental compliance program enforcing all environmental laws, regulations, and permits. MAC'S agrees that the environmental compliance program will be diligently enforced by the officers and managers of MAC'S. This program will be developed and implemented by MAC'S in sufficient detail to satisfy the requirements of Chapter 8 of the United States Sentencing Commission Guidelines concerning effective programs to prevent and detect violations of law. U.S.S.G. § 8A1.2. As part of establishing and maintaining an effective compliance program, MAC'S will do the following:

a) Develop an environmental compliance manual no later than one hundred and twenty (120) days after imposition of sentence. The manual will cover general areas of environmental regulation, including corporate and regulatory agency notifications in cases of spills, releases, emissions, or discharges of pollutants into the environment; dealings with regulatory inspectors and personnel; and the importance of accuracy and honesty in reporting to regulatory agencies spills, releases, emissions, or discharges of pollutants into the environment. The manual will also detail how company employees can report environmental noncompliance without fear of retribution. Defendant will provide the Environmental Protection Agency with a draft copy of the manual for its review and comments. The final draft of the manual, together with EPA comments and the Defendant's response to those comments, shall be submitted to the United States Attorney's Office and the Probation Office. The Defendant further understands

and agrees to assume all costs associated with the implementation and maintenance of this program.

      b)    Within thirty (30) days of entering into this Agreement, Defendant will identify a specific environmental liaison with the Board of Directors and ensure that this person has sufficient training, background and experience for the job. The individual must report to the Board of Directors and the job responsibilities for the environmental liaison must include environmental compliance. The liaison must have authority to report noncompliance directly to the Board of Directors and corporate officers. The liaison will be directly responsible for monitoring, maintaining, and enforcing the provisions of the environmental compliance program.

      c)    Train all employees annually about the requirements of environmental laws, regulations, and permits and about the necessity of personal responsibility in enforcement of environmental laws, regulations, and permits.

      d)    Retain an outside environmental auditor at the six month anniversary of entry of this plea agreement to conduct an audit of all MAC'S facilities in the State of Idaho to assess and report compliance with all environmental laws, regulations, and permits, adequacy of the compliance program, and adequacy and frequency of environmental training. The auditor shall have full access to all MAC'S facilities in the State of Idaho and all records relating to MAC'S compliance with environmental laws, regulations and permits. MAC'S shall correct any deficiencies noted in the auditor's report and

provide the U.S. Attorney's Office and the Probation Office with a copy of the final report.

  e) MAC'S will assume all costs associated with the implementation and maintenance, including the expenses incurred by the outside auditor, of all aspects of the environmental compliance program.

  4. The Defendant understands this Agreement does not confer any immunity on the Defendant or any of its officers, employees or directors for making false statements to the Government or giving untruthful testimony under an oath at any judicial proceeding, nor does this Agreement provide use immunity or derivative use immunity to the Defendant or any of its officers, employees or directors for any statements.

## V. ELEMENTS

The elements of the offenses described in the Information, to which the Defendant agrees to plead guilty based on the theory of vicarious liability, are as follows:

  1. Kevin Jonely was a person in charge of the facility at the time and place of and for the act charged in the Information;

  2. That a hazardous substance in an amount equal to or exceeding a reportable quantity was released from that facility into the environment by the person in charge of the facility;

  3. That the person in charge of the facility knew of the release of the hazardous substance from the facility;

4. That the person in charge of the facility failed to report that release to the appropriate federal agency, that is, to the National Response Center, as soon as he had knowledge of that release; and

5. That the Defendant Corporation is vicariously liable for the above-stated conduct of the person in charge of the facility.

## VI. FACTUAL BASIS

The conduct described below constitutes a factual basis for the violations contained in Count One of the Information. The Defendant, as a corporation, is criminally liable for the acts of its employee comprising the essential elements of the offense with which it is charged. The parties stipulate that, for the purposes of this Agreement, the following provides a factual and legal basis for the Defendant's conviction of the crime charged in the Information.

A. The Defendant

MAC'S is an Oregon corporation engaged in vehicle radiator repair and reconditioning business with operations in the State of Idaho.

B. The Defendant's Conduct

MAC'S owns a vehicle radiator repair and reconditioning facility at 112 West 35th Street in Boise, Idaho. The repair and reconditioning processes used by MAC's generated wastewater and sludge materials that contained high concentrations of lead. The wastewater

and sludge materials were allowed to accumulate in two large underground interceptor sumps.

In early November, 2000, inspectors with the City of Boise collected environmental samples from the interceptor sumps. An analysis of the samples indicated that the waste materials in the interceptor sumps exhibited the hazardous characteristic of toxicity for lead, as defined under the Resource Conservation and Recovery Act. The analytical results were reported to MAC'S together with specific instructions that the waste materials were not to be discharged to the sewer system and were only to be properly disposed of as hazardous waste.

On or about December 7, 2000, MAC'S employees, acting under the direction of the person in charge of the facility, Kevin Jonely, released a quantity of the wastewater and sludge containing a reportable quantity of hazardous substance to a storm water catch

//
//
//
//
//
//
//
//
//
//
//

1  basin located at the facility. The storm water catch basin was open
2  to the environment. Jonely did not report the release to the
3  appropriate federal agency.
4  **For the United States:**
5  THOMAS E. MOSS
   United States Attorney

8  _____  Date: 12/19/01
   George W. Breitsameter
   Assistant United States Attorney

11 _____  Date: 12/19/01
   James D. Oesterle
   Special Assistant U.S. Attorney

13 **For MAC'S RADIATOR & REPAIR, INC.:**

15 _____  Date: 12-17-01
   Steve MacDonald
16 MAC'S RADIATOR & REPAIR, INC.

18 _____  Date: 12-19-01
   Paul L. Westberg
19 Counsel for
   MAC'S RADIATOR & REPAIR, INC.

22 _____  Date: 12-18-01
   James L. Martin
   Counsel for
   MAC'S RADIATOR & REPAIR, INC.

# ORIGINAL

## MAC'S RADIATOR AND REPAIR, INC.

### BOARD RESOLUTION NO. 2001-01

RESOLVED, that the President and Chief Executive Officer and his or her designees are, and each of them is hereby authorized

- to waive the Corporation's right to Indictment;

- to plead guilty to an Information charging the Corporation with 1 count of federal criminal violation of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") 42 USC § 9603(b) in connection with the Corporation's operation of its facility in Garden City, Idaho;

- to enter into a Plea Agreement in connection with this Information;

- to appear in Court as necessary to take any of these actions;

and to take such further action and execute such documents and agreements as may be necessary or advisable to plead guilty to the aforesaid Information and enter into the Plea Agreement including payment of related fines and penalties as approved and substantially presented in this meeting. All corporate formalities necessary for these actions have been observed.

The execution of this Resolution shall constitute a written waiver of any notice required by the Oregon Corporations Code and this Corporation's Articles of Incorporation and bylaws.

ADOPTED and DATED this 14 day of December, 2001, at Portland, Oregon.

_____
Corwin J. MacDonald, Director

_____
Penny P. MacDonald, Director

_____
Stephen P. MacDonald, Shareholder

_____
Curtis MacDonald, Shareholder

_____
Diana K. DeBray, Shareholder

_____
Lisa Bursen, Shareholder

901 MT1:375243.1

# ORIGINAL

### Waiver of Notice of Meeting of a
### Meeting of the Board of Directors
### of Mac's Radiator and Repair, Inc.

The undersigned, constituting the entire membership of the Board of Directors of Mac's Radiator and Repair, Inc., hereby waive notice of the meeting of the Board of Directors of Mac's Radiator and Repair, Inc., and consent to the holding of the meeting at ___3:00___ on Friday, December 14, 2001, at 6147 S.E. Foster Road, Portland, Oregon, and agree that any lawful business may be transacted at the meeting.

Date: 12-14-01

_____
Corwin J. MacDonald, Director

Date: 12-14-01

_____
Penny P. MacDonald, Director

Date: 12-14-01

_____
Stephen P. MacDonald, Shareholder

Date: 12-14-01

_____
Curtis MacDonald, Shareholder

Date: 12-14-01

_____
Diana K. DeBray, Shareholder

Date: 12-14-01

_____
Lisa Bursen, Shareholder

# ORIGINAL

## CERTIFICATION

I, Penny P. MacDonald, Corporate Secretary of Mac's Radiator and Repair, Inc., (the "Company"), hereby certify for and on behalf of the Company that attached hereto is a true and complete copy of a resolution adopted by the Company's Board of Directors at a meeting duly called and held on December 14, 2001, and that said resolution has not been modified or revoked and remains in full force and effect on this date hereof.

DATED this 14th day of December, 2001.

*Penny P. MacDonald*
Penny P. MacDonald
Corporate Secretary

Sworn To and Subscribed Before Me this 14th day of December, 2001.

*[signature]*
Notary Public in and for the State of Oregon
My Commission Expires: August 7th, 2005

OFFICIAL SEAL
BRENDA KIBBE
NOTARY PUBLIC-OREGON
COMMISSION NO. 348603
MY COMMISSION EXPIRES AUG. 7, 2005